**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEVIN MOREAU, | 1:12-CV-01862-LJO-JLT |
| Plaintiff, | **ORDER ON MOTION TO STRIKE**<br>(Doc. 8) |
| v. | |
| THE DAILY INDEPENDENT, | |
| Defendant. | |

**INTRODUCTION**

Plaintiff Kevin Moreau ("Moreau") filed this action against Defendant The Daily Independent ("TDI") for libel and "intentional tort" relating to an article TDI published on the motorcycle accident that resulted in the death of Moreau's son Staff Sergeant Kirk Collado ("Collado"). Before the Court is TDI's motion to strike Moreau's complaint pursuant to California's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute, Cal. Code Civ. Proc. § 425.16. Moreau did not file an opposition. For the reasons discussed below, the Court GRANTS TDI's motion to strike Moreau's complaint.

**BACKGROUND**

**A. Relevant Facts**

On September 19, 2011, Moreau's son Collado was riding his motorcycle when he collided with a car in Ridgecrest, California. TDI reporter John Ciani went to the scene of the accident to gather information and spoke with Ridgecrest Police Department Sergeant Jed McLaughlin.

The next day, September 20, Ciani was notified by the Kern County Sheriff's Office-Coroner

Section that Collado did not survive his injuries. Ciani contacted Sgt. McLaughlin for further detail, and Sgt. McLaughlin stated that "Alcohol and drugs may have played a role in the collision." Sgt. McLaughlin stated that this information was based on the Kern County Coroner's preliminary toxicology report which showed that Collado had drugs and alcohol in his system when he was hospitalized following the accident.

On September 21, 2011, TDI published in print and on its online website an article by Ciani on the fatal motorcycle collision ("September 2011 Article"). The article included Sgt. Jed McLaughlin's statement that "Alcohol and drugs may have played a role in the collision."

On or around March 8, 2012, Moreau telephoned Ciani about the September 2011 Article. Moreau explained that he was Collado's father and that, although the initial toxicology report tested positive for methamphetamine, the final coroner's report indicated no presence of drugs. Moreau asked Ciani to prepare an article as a tribute to Collado reflecting that drugs ultimately were not involved in the collision even though alcohol was involved. Ciani agreed to draft the article. On March 9, 2012, Moreau emailed Ciani with the proposed language of the article and a picture of Collado in military uniform.

A few days later, Ciani spoke with Captain Paul Wheeler and Sgt. Mike Myers of the Ridgecrest Police Department about Collado's death. Sgt. Myers confirmed that the Police Department initially believed drugs and alcohol may have played a role in the collision because the initial report released by the Kern County Coroner showed Collado had both drugs and alcohol in his system.

Ciani drafted the front-page tribute article. TDI published the tribute article on March 21, 2012 with Collado's picture and the language Moreau requested ("Tribute Article"). Moreau later contacted Ciani to express his gratitude for the Tribute Article.

Moreau contacted TDI Managing Editor Cheeto Barrera ("Barrera") three times by telephone, on March 20, 2012, March 26, 2012, and in mid-April of 2012, and once in a letter, dated May 15, 2012, to request that TDI remove the September 2011 Article from the Google search engine. Barrera informed him that TDI accurately published the September 2011 Article based on the information the Ridgecrest Police Department provided on September 20, 2011, which was days before the coroner

conducted its final report. Barrera explained that he had no control over Google and thus could not remove the September 2011 Article, but would ensure that TDI published a tribute to Collado on the front-page of both its written and online editions with Collado's picture. Barrera also revised the internet version of the September 2011 Article to reflect much of the content in the Tribute Article. Barrera did not respond to the May 15 Letter.

Subsequently, Moreau sent TDI a "Demand Letter/Notification of Pending Law Suit" dated August 14, 2012 ("Demand Letter"), demanding $26 million in damages for alleged libel in the September 2011 Article. In particular, Moreau objected to TDI's publication of the statement by Sgt. McLaughlin that drugs and alcohol may have played a role in the collision. On August 22, 2012, Barrera contacted the Ridgecrest Police Department to verify the accuracy of the September 2011 Article. Ridgecrest Police Department Chief Ronald Strand confirmed that Sgt. McLaughlin's statement was accurate at the time of its publication based on Collado's initial toxicology report from the Kern County Coroner.

GateHouse Media, Inc.'s General Counsel Polly Grunfeld Sack sent Moreau a letter dated September 5, 2012, stating that the September 2011 Article was protected by privilege and not actionable under California law and offered to work with Moreau on printing another tribute article. Moreau declined the offer.

**B. Relevant Procedural History**

On September 20, 2012, Plaintiff filed the instant action in the Superior Court of California, County of Kern, bringing a claim for libel and for "intentional tort." Moreau seeks $26 million in damages.

TDI timely removed the action to this Court on November 13, 2012 and filed the instant motion to strike on December 11, 2012. Moreau did not file an opposition.

**DISCUSSION**

**Motion to Strike**

**A.  Legal Standard**

California's "anti–SLAPP" statute provides in relevant part:

A cause of action against a person arising from any act of that person in furtherance of the

person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal.Code Civ. Pro. § 425.16(b)(1).

A court considering a motion to strike under the anti–SLAPP statute must engage in a two-part inquiry. First, a defendant must make an initial prima facie showing that the plaintiff's suit "aris[es] from" activity protected by the anti–SLAPP statute. *Brill Media Co. v. TCW Group, Inc.*, 132 Cal.App.4th 324, 329 (2005), Cal.Code Civ. Pro. § 425.16(b)(1). In performing this analysis, the California Supreme Court has stressed, "the critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal.4th 69, 78 (2002). If the defendant is able to make this threshold showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims. In practice, a plaintiff must show that the claim is "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal.4th 728, 744 (2003). Claims for which a plaintiff is able to satisfy this burden are "not subject to being stricken as a SLAPP." *Id*.

**B.    Activity Protected by Cal.Code Civ. Pro. § 425.16**

Essentially, Moreau claims that he was defamed by TDI's publication of the statement in the September 2011 Article that "[a]lcohol and drugs may have played a role in the collision." Moreau alleges that TDI published Sgt. McLaughlin's statement "to disgrace the plaintiff's parenting efforts, and his Son's Good Standing Military Career."

**1.    Public Forum**

The anti-SLAPP statute protects "a writing made in . . . a public forum in connection with an issue of public interest[.]" Cal. Civ. Proc. Code § 425.16(e)(3). California courts of appeal have disagreed on whether a newspaper is a "public forum" within the meaning of § 425.16(e)(3). In cases where courts have found newspapers not to be public forums under anti-SLAPP, the finding typically is based on the selective access to the newspaper in that members of the public cannot freely publish

4

their opinions in them. *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*, 37 Cal.App.4th 855, n. 5 (1995) ("Newspaper editors or publishers customarily retain the final authority on what their newspapers will publish in letters to the editor, editorial pages, and even news articles, resulting at best in a controlled forum not an uninhibited 'public forum.'"), *Weinberg v. Feisel*, 110 Cal.App.4th 1122, 1130 (2003) ("Means of communication where access is selective, such as most newspapers, newsletters, and other media outlets, are not public forums.").

Other courts have disagreed, finding that a newspaper can be a "public forum" under anti-SLAPP because "the opinions they express are readily available to members of the public and contribute to the public debate." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1037 (2008); *see also*, *Annette F. v. Sharon S.*, 119 Cal.App.4th 1146, 1161 (2004) ("This court has concluded that a news publication is a 'public forum' within the meaning of the anti-SLAPP statute if it is a vehicle for discussion of public issues and it is distributed to a large and interested community."); *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1046 (1997) ("[N]ews reporting activity *is* free speech. Nothing in any portion of subdivision (e), which is unambiguous on its face, confines free speech to speech which furthers the exercise of petition rights.") (emphasis in the original). In fact, courts have found that a publication can be a "public forum" even if it only gives voice to a single viewpoint: "Given the mandate that we broadly construe the anti-SLAPP statute, a single publication does not lose its 'public forum' character merely because it does not provide a balanced point of view." *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 477 (2000).

In addition, the California Supreme Court has held that "[w]eb sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute." *Barrett v. Rosenthal*, 40 Cal. 4th 33, n. 4 (2006) (citing *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA*, Inc., 129 Cal.App.4th 1228, 1247 (2005); *Wilbanks v. Wolk*, 121 Cal.App.4th 883, 895 (2004); *ComputerXpress, Inc. v. Jackson,* 93 Cal.App.4th 993, 1007 (2001); *MCSi, Inc. v. Woods*, 290 F.Supp.2d 1030, 1033 (N.D. Cal. 2003)).

The Court agrees with the broader interpretation of the anti-SLAPP statute. The Legislature amended the anti-SLAPP statute in part to direct the courts to construe the statute broadly. Cal. Code Civ. Proc. § 425.16(a). Also, the plain language of § 425.16(e)(3) to apply to statements made "in a

place open to the public or a public forum" indicates that a public forum need not be open to the public. *Nygard*, 159 Cal. App. 4th 1038, citing Cal. Code Civ. Proc. § 425.16(e)(3). "[M]ost non-internet based forms of public communication, including newspapers, magazines, pamphlets, and leaflets, are subject to some form of editorial control." *Nygard*, 159 Cal. App. 4th 1038. "Nothing in the language of the statute or its legislative history suggests that the Legislature intended to exclude this large category of traditional print media from anti-SLAPP protection." *Id*. In fact, the narrow definition of "public forum" applied by courts that point to the editorial control of newspapers "appear[s] to be at odds with the definition of a 'public forum' under the plain meaning of the phrase and under the California Constitution." *Damon*, 85 Cal. App. 4th at 478. According, the Court concludes that both the print and website versions of the September 2011 Article published by TDI are statements or writings "made in a place open to the public or a public forum" within the meaning of the anti-SLAPP statute. Cal. Code Civ. Proc. § 425.16(e)(3).

### 2. Issue of Public Interest

In addition to being "made in a place open to the public or a public forum," to be protected by anti-SLAPP, a statement also must be "in connection with an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(3).

Although § 425.16 does not define "public interest," "[l]ike the SLAPP statute itself, the question whether something is an issue of public interest must be construed broadly." *Hecimovich v. Encinal Sch. Parent Teacher Org*., 203 Cal. App. 4th 450, 464 (2012), citing *Gilbert v. Sykes*, 147 Cal.App.4th 13, 23 (2007), *Rivera v. First DataBank, Inc*., 187 Cal.App.4th 709, 716 (2010). The court in *Nygard* analyzed the Legislature's amendment of § 425.16 as well as the cases it rejected and endorsed for their interpretations of this requirement and concluded that, "[t]aken together, these cases and the legislative history that discusses them suggest that 'an issue of public interest' within the meaning of section 425.16, subdivision (e)(3) is *any issue in which the public is interested*." 159 Ca.App.4th at 1042 (emphasis in the original). The statement "may encompass activity between private people." *Rivera*, 187 Cal.App.4th at 716.

California courts have yet to rule on whether a fatal traffic collision and its ensuing rescue efforts by emergency medical personnel and police investigation are "issue[s] of public interest" within

the meaning of the anti-SLAPP statute. A California appeal court has held in an unreported decision that "news reporting activities regarding issues of public interest, including [] emergency medical treatment, and are within the anti-SLAPP statute." *Carter v. Superior Court*, 2002 WL 27229 at *3 (Jan. 10, 2002). Further, the California Supreme Court has held that, in the context of "private facts" torts, "[a]utomobile accidents are by their nature of interest to that great portion of the public that travels frequently by automobile." *Shulman v. Group W Productions, Inc*., 18 Cal. 4th 200, 228 (1998). "The rescue and medical treatment of accident victims is also of legitimate concern to much of the public, involving as it does a critical service that any member of the public may someday need." *Id*. The California Supreme Court's reasoning also applies in determining whether the published statement here involves "issue[s] in which the public is interested." *Nygard*, 159 Ca.App.4th at 1042. Collado's motorcycle accident is of legitimate concern to TDI's Ridgecrest, California readers, who may ride motorcycles or share the roads with motorcyclists. The rescue efforts by the emergency medical personnel likewise involve "a critical service that any member of the public may someday need." *Shulman*, 18 Cal. 4th at 228.

Therefore, the Court finds that the publications by TDI on events and circumstances surrounding Collado's fatal motorcycle collision are statements "made in a place open to the public or a public forum" and "in connection with an issue of public interest" within the meaning of the anti-SLAPP statute. Cal. Code Civ. Proc. § 425.16(e)(3).

**C.     Probability of Prevailing on the Claims**

TDI has made an initial prima facie showing that the plaintiff's suit "aris[es] from" activity protected by the anti–SLAPP statute. *Brill*, 132 Cal.App.4th at 329, Cal.Code Civ. Pro. § 425.16(b)(1). The burden shifts to Moreau to demonstrate a probability of prevailing on the challenged claims. For each of his claims to survive the motion to strike, Moreau must show that the claim is "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Jarrow Formulas, Inc.,* 31 Cal.4th at 744 (2003).

**1.     Libel**

Moreau alleges that TDI's publication of Sgt. McLaughlin's statement that "[a]lcohol and

drugs may have played a role in the collision" "defam[es] plaintiff's character as a parent, the plaintiff's parenting efforts, and most importantly the plaintiff's son Staff Sergeant Kirk Ryan Moreau/aka Kirk Collado's character[.]"

Under California law, the tort of defamation involves "the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999). "The sine qua non of recovery for defamation . . . is the existence of falsehood." *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 112 (2007) (citing *Letter Carriers v. Austin*, 418 U.S. 264, 283 (1974)). "In all cases of alleged defamation, whether libel or slander, the truth of the offensive statements or communication is a complete defense against civil liability, regardless of bad faith or malicious purpose." *Maldonado*, 72 Cal. App. 4th at 646.

Moreau cannot show that the statement at issue involves a false statement of fact. As Moreau admits, a urine sample taken from Collado on September 19, 2011 tested positive for methamphetamines.[1] TDI published Ciani's article with the statement by Sgt. McLaughlin on September 20, 2011. Following TDI's publication of the September 2011 Article, further tests determined that the September 19, 2011 lab work yielded a false positive, and that drugs were not involved. Nonetheless, at the time of publication, Sgt. McLaughlin's statement that "[a]lcohol and drugs may have played a role in the collision" was not demonstrably false.

Therefore, because Moreau fails to demonstrate a probability of prevailing on his libel claim, the Court GRANTS TDI's motion to strike Moreau's first cause of action pursuant to the anti-SLAPP statute.

**2.    "Intentional Tort"**

In his second cause of action, vaguely titled "intentional tort," Moreau makes no separate or additional allegations. He claims that TDI "intentionally released unfounded speculation" in the September 2011 Article "to disgrace the plaintiff's parenting efforts" and that TDI "intentionally published the article without fear of libel litigation." As discussed above, defamation involves "the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to

---

[1] Neither party contests that Collado tested positive for alcohol and that alcohol was involved in the collision.

injure or which causes special damage." *Maldonado*, 72 Cal. App. 4th at 645.  Thus, Moreau simply appears to reiterate his libel claim while emphasizing the intentional nature of TDI's publication of the September 2011 Article.

Because Moreau brings no separate or additional claims and merely repeats his first cause of action, the Court GRANTS TDI's motion to strike Moreau's second cause of action pursuant to the anti-SLAPP statute.

**CONCLUSION AND ORDER**

For the reasons discussed above, the Court:

1. GRANTS Defendant The Daily Independent's motion to strike Plaintiff Kevin Moreau's complaint pursuant to California's anti-Strategic Lawsuit Against Public Participation statute, Cal. Code Civ. Proc. § 425.16(b); and

2. DIRECTS the clerk of court to enter judgment in favor of Defendant The Daily Independent against Plaintiff Kevin Moreau and close this action.

IT IS SO ORDERED.

Dated: **January 8, 2013**              /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE